**UNITED STATES of America, Appellee,**

v.

**HON Yee–Chau and Tse Chi–Chat, Defendants–Appellants.**

**Nos. 752, 753, Docket 93–1510, –1542.**

United States Court of Appeals, Second Circuit.

Argued Dec. 15, 1993.

Decided Jan. 21, 1994.

Mark B. Gombiner, New York, NY (The Legal Aid Society, Federal Defender Services Unit, of Counsel), for Appellant Hon Yee–Chau.

Charles A. Ross, New York, NY (Benjamin Brafman, P.C., of Counsel), for Appellant Tse Chi–Chat.

Michael A. Rogoff, New York, NY, Assistant United States Attorney for the Southern District of New York (Mary Jo White, United States Attorney for the Southern District of New York, John W. Auchincloss II, Assistant United States Attorney, of Counsel), for Appellee.

Before: FEINBERG, MINER and MAHONEY, Circuit Judges.

FEINBERG, Circuit Judge:

Hon Yee–Chau (Hon) and Tse Chi–Chat (Tse) appeal from judgments of conviction entered in the United States District Court for the Southern District of New York, Kevin Thomas Duffy, J. Hon seeks vacation of his sentence and an order directing the government to move for a downward departure. Tse seeks vacation of his conviction and a new trial. We affirm.

The two men were indicted on one count of conspiracy to distribute and possess with intent to distribute heroin and one count of distribution and possession with intent to distribute heroin. Pursuant to an agreement with the government, Hon pleaded guilty to the conspiracy count. In April 1993, a jury found Tse guilty on both counts. Hon was sentenced in July 1993 to 60 months in prison, to be followed by four years of supervised release. He was also ordered to pay a $3500 fine and a $50 special assessment. Two weeks later, Tse was sentenced to 97 months in prison, to be followed by five years of supervised release, and was required to pay a $100 special assessment.

## I. Factual Background

On December 9, 1992, Tse drove Hon to a meeting with a confidential FBI informant and an undercover FBI agent, Man Louie. Agent Louie posed as a potential drug buyer named "Mr. Kam." At the meeting, Hon arranged to sell Agent Louie heroin at a price of $110,000 per 700–gram "unit." Later that day, Hon and Tse delivered 340 grams of heroin to Agent Louie. When Agent Louie met with Hon the following day, purportedly to pay for the heroin, FBI agents arrested Hon. Tse, who was waiting nearby in a car, was also arrested.

On January 11, 1993, Hon signed a plea and cooperation agreement (cooperation agreement) with the Office of the United States Attorney for the Southern District of New York. Under the agreement, Hon agreed to plead guilty to the conspiracy charge and to "cooperate fully" with the government, including testifying at trial if necessary. In return, the government promised among other things that if, in the government's determination, Hon provided "substantial assistance" and "otherwise complied" with the terms of the agreement, the government would file a motion, pursuant to Section 5K1.1 of the United States Sentencing Guidelines, asking the district court to grant Hon a downward sentencing departure. Hon pleaded guilty that day.

On April 14, 1993, at Tse's trial, the government called Hon to the witness stand. After he testified about his cooperation agreement, he was asked how he first became involved in the drug deal. The following exchange ensued:

HON: Here I would request your Honor and also members of the jury, may I be permitted to have some explanation here at this point?

THE COURT: As to what?

HON: About this issue.

MR. ROGOFF [prosecutor]: I think we should take this in the back if you like.

THE COURT: I think we ought to take it some place else.

Ladies and gentlemen, why don't you step out and we can take a break here.

After the jury was excused, Hon explained to the judge why he had agreed to testify. He claimed that at the time of his arrest, an FBI agent told him that "Mr. Kam" (Agent Louie) was a major heroin trafficker who would have killed Hon had "Kam" not been arrested himself. Hon only later realized that "Kam" was in reality working for the FBI. The realization that the government had deceived him made him "very nervous." The government, Hon told the judge, "is the biggest biggest organization. I am the smallest tiniest unit." Based on this realization, Hon said, he decided to sign the cooperation agreement. The government expressed its surprise at Hon's statements. Because Hon's attorney was not present, Judge Duffy adjourned for the day.

The following day, April 15, Hon's attorney told the court that after speaking with Hon, "there was certainly some question in my mind whether he wanted to continue to be cooperative with the government and continue to testify." The Assistant United States Attorney then stated that, if necessary, he would move the court for permission to declare Hon a hostile witness. Hon's attorney replied that in such a case he would advise Hon to invoke his Fifth Amendment right not to testify. In response, the Assistant stated that he would seek to compel Hon's testimony under an immunity order. After a recess, Hon's attorney told the court that although he had advised Hon to testify, "[u]p to two minutes ago he was still changing his mind. The last word he said is [he] will wait until he is ordered, if he is so ordered." Because the immunity order had not yet been obtained, court was adjourned until the following Monday, April 19.

On April 16, Judge Duffy signed an order compelling Hon to testify under immunity. That afternoon, Hon's attorney informed the government that Hon was willing to testify pursuant to the agreement, but the government replied that Hon had breached the agreement and that the government would not honor it. Hon's attorney maintained that the government did not have the right to unilaterally rescind the agreement.

When the trial resumed on Monday, April 19, the government called Hon as a witness.

Because Hon did not invoke his Fifth Amendment rights, the compulsion order was not used. Hon acknowledged that the government's attorneys had told him they considered the cooperation agreement invalid. He indicated under cross-examination, however, that he still believed he could reduce his sentence through cooperation.

After Tse's trial, the government informed Hon by letter dated June 29, 1993, that it would not honor the cooperation agreement. In response, Hon moved the court for an order compelling the government to honor its obligation under the agreement. Although Judge Duffy did not formally act on the motion, he obviously denied it, since he stated to Hon's attorney, "I can't see any bad faith about this at all except perhaps for the activities of your client, who decided to play games." The judge sentenced Hon to five years, which was the statutory minimum term in the absence of a downward departure based upon a government motion. This appeal followed.

## II. Discussion

### A. Hon's arguments

■ Hon argues that the government breached the cooperation agreement by failing to move for a downward departure under Section 5K1.1 of the Guidelines. According to Hon, although he hesitated and delayed the trial, he eventually testified and provided significant evidence against Tse. Thus, he committed no material breach of the agreement.

■ We find, however, that the government justifiably refused to make the 5K1.1 motion. Under the cooperation agreement, the government was to move for a downward departure

> if it is determined by this Office [the United States Attorney for the Southern District of New York] that Hon Yee Chau has provided substantial assistance in an investigation or prosecution, and if Hon Yee Chau has otherwise complied with the terms of this Agreement....

Thus, the agreement explicitly placed the evaluation of Hon's performance within the discretion of the government. In such a

situation, "the prosecutor's discretion determines whether the defendant's conduct has risen to the level of 'substantial assistance' and thus, whether to make the motion." *United States v. Rexach,* 896 F.2d 710, 714 (2d Cir.), cert. denied, 498 U.S. 969, 111 S.Ct. 433, 112 L.Ed.2d 417 (1990). The district court's review of the government's failure to move for a downward departure is limited to whether it acted in bad faith or relied on impermissible criteria such as race or religion. *United States v. Knights,* 968 F.2d 1483, 1487 (2d Cir.1992). Judge Duffy indicated, however, that Hon, rather than the government, had acted in bad faith with respect to the agreement. We agree with Judge Duffy.

Hon's argument is based on the mistaken premise that he fulfilled his entire obligation to the government by testifying against Tse. Hon's testimony, however, was only one aspect of the cooperation agreement. He was also obliged to "cooperate fully" with the government. Although Hon's trial testimony was consistent with the information he had previously given the government, he had forced the government to obtain an immunity order, delayed the trial and required the government to call Hon after the hiatus without preparation. Hon's counsel argues to us that the government's inability to prepare was self-inflicted, since counsel had indicated on the afternoon of April 16 that Hon was willing to testify. But by this time, the government had already decided that the cooperation agreement had been breached, a decision that we regard as justifiable. In light of the delay, inconvenience and uncertainty Hon caused, the government could reasonably have determined that Hon breached his duty to "cooperate fully" under the agreement.

■ Hon characterizes the government's repudiation of the agreement before he testified as an "anticipatory breach" and suggests it was a deliberate, bad faith attempt by the government to escape its obligations and enhance Hon's credibility before the jury. The government had no other reason to rescind the agreement before hearing Hon's testimony, he argues, since the government's only obligation under the bargain, filing a 5K1.1

motion, did not have to be fulfilled until after trial.

■ We disagree with this interpretation of the government's actions. We have held that ordinary contract principles apply to interpretation of cooperation agreements. *Rexach,* 896 F.2d at 713. A plaintiff alleging an anticipatory breach of contract must show (1) that the defendant insisted upon terms not contained in the contract; and (2) that the plaintiff was "ready, willing, and able to perform its own obligations under the contract when performance was due." *Towers Charter & Marine Corp. v. Cadillac Ins. Co.,* 894 F.2d 516, 523 (2d Cir.1990) (citing New York law). Hon has met neither of these criteria. First, as noted above, the terms of the contract justified the government's insistence upon more complete cooperation from Hon than merely his belated testimony. Second, when his performance first came due at trial on April 14, Hon was unwilling to perform.

■ Furthermore, as Judge Duffy found, the government's repudiation of the agreement did not show bad faith. To the contrary, the government would have truly shown bad faith had it hidden its intent not to honor the agreement until after inducing Hon to testify. Cf. *United States v. Vogt,* 901 F.2d 100, 102 (8th Cir.1990). Instead, the government acted in good faith by announcing its intent not to honor the agreement as soon as it had determined that a breach had been committed.

■ Hon further argues that even if he did breach the agreement, the government ultimately benefitted from the breach. Once the government had rescinded the agreement, it called Hon as a witness with enhanced credibility in the eyes of the jury. Hon argues that the government should not be allowed to reap the benefit contemplated by the agreement, and even more, without fulfilling its end of the bargain. This argument, however, assumes that Hon breached the agreement. On that assumption, the government was justified in repudiating it. That this repudiation may have had the unintended collateral effect of enhancing Hon's credibility is irrelevant. It would, of course,

be an entirely different matter had the government intentionally repudiated the agreement in bad faith in order to enhance Hon's credibility. But Judge Duffy found that the government did not act in bad faith.

**B. Tse's argument based on the repudiation of the cooperation agreement**

■ Tse independently argues that his rights were violated by the repudiation of the cooperation agreement. He claims that in the absence of a prior court ruling that the government acted properly in calling off the agreement, the government should not have been permitted to convey to the jury, through Hon's testimony, that the agreement was no longer in effect. We disagree.

■ Tse had maintained in his opening argument that the cooperation agreement had given Hon an incentive to lie. Moreover, just prior to the interruption of the trial, the government itself had elicited Hon's testimony concerning the details of the cooperation agreement. Thus, after the government repudiated the agreement during the hiatus in the trial, it was proper, perhaps even necessary, for the government to introduce evidence of the new circumstances. The government's actions did not unfairly enhance Hon's credibility, since Hon admitted on cross-examination that he still hoped the agreement would help reduce his sentence. In any event, even if Judge Duffy's admission of the testimony without a prior ruling was error, it was harmless, since the judge later indicated that the government had rescinded the agreement in good faith.

**C. Tse's argument that counsel was ineffective**

■ Tse argues that his trial counsel was constitutionally ineffective. Counsel filed no pretrial motions, even though the police had elicited a damaging statement from Tse and the government had used an informant who did not testify. Counsel failed to object to any of the court's jury instructions, made no charge requests of his own and waived venue, even though some of the actions occurred in the Eastern, rather than the Southern, District of New York. Counsel's closing argument began with the following garbled state-

ment: "The awesome majesty that has become the American bald eagle, yet, you must render unto Caesar only what justly belongs to Caesar, and it was the intention of our founding father that you use this rendition and temper it with reasonable doubt." Finally, according to Tse, counsel's most outrageous omission was his failure to cross-examine Hon about his five-day absence from the witness stand.

To establish a claim of ineffective assistance, a defendant must show a reasonable likelihood that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). "Actions or omissions by counsel that 'might be considered sound trial strategy' do not constitute ineffective assistance." *United States v. Javino,* 960 F.2d 1137, 1145 (2d Cir.), cert. denied, —— U.S. ——, 113 S.Ct. 477, 121 L.Ed.2d 383 (1992).

 Tse has failed to make out a claim of ineffective assistance. Counsel's failure to move for suppression of Tse's post-arrest statement is understandable, since the statement appears to have been properly obtained. Tse explains neither why the statement should have been suppressed nor how he was prejudiced by its admission. As for the jury instructions, Tse does not argue that any specific instructions were objectionable. The waiver of venue appears proper, since it was done only after consultation with Tse. Furthermore, the waiver may have saved Tse from facing a second trial in the Eastern District of New York. As for the summation, although an incompetent summation can constitute ineffective assistance, *United States v. Jordan,* 927 F.2d 53, 57 (2d Cir.) (dicta), cert. denied, —— U.S. ——, 111 S.Ct. 2811, 115 L.Ed.2d 983 (1991), counsel's "bald eagle" comment was merely inarticulate. Counsel's argument as a whole was an effective one. Finally, counsel may have decided not to question Hon about his five-day absence from the witness stand in order to avoid further testimony about the government's rescission of the agreement. Although he asked no questions specifically about the hiatus, counsel did elicit Hon's

statement that he believed his cooperation with the government could help reduce his sentence.

We have examined all of appellants' arguments and find them to be without merit. The judgments of conviction are affirmed.