**Alonzo GREGORY, Petitioner**

v.

**UNITED STATES of America; Respondent**

**No. 3:96–CR–00114(EBB).**
**No. 3:02–CV–01643 (EBB).**

United States District Court,
D. Connecticut.

Feb. 4, 2003.

88

Paul A. Heller, Willimantic, CT, Linda S. Sheffield, Atlanta, GA, for Alonzo T. Gregory.

Alonzo T. Gregory, Manchester, KY, pro se.

Peter S. Jongbloed, Michael G. Zuk, U.S. Attorney's Office, New Haven, CT, for U.S.

### RULING ON PETITIONER'S MOTION UNDER 28 U.S.C. Section 2255

ELLEN BREE BURNS, Senior District Judge.

Alonzo Gregory ("Gregory" or "Petitioner") has filed a Motion to Vacate, Set Aside or Correct Sentence, pursuant to Title 28 U.S.C. Section 2255, alleging ineffective assistance by his plea counsel, his sentencing counsel, and the use of an incorrect standard of review used by the judge in sentencing him.

After a thorough review of the parties moving papers and exhibits thereto, it was determined that a hearing did not need to be held in order to decide the present Motion. Said Motion is now ready for decision.

### STATEMENT OF FACTS

The Court sets forth only those facts deemed necessary to an understanding of the issues raised in, and decision rendered on, this Motion. The facts are distilled from the parties' moving papers, the joint and government appendices before the Second Circuit, the presentence report, the transcript of the taking of the guilty plea, and the transcript of Petitioner's sentencing.

On March 26, 1996, an undercover Connecticut State Police detective working with the Hartford Federal Gang Task Force ("HFGTF") made an undercover purchase of 11.3 grams of crack cocaine from Gregory. This purchase, made in a

late model red Ford, was observed by two other undercover detectives. As the detective was exiting the car, Gregory advised him that if, in the future, he wanted more crack cocaine, Gregory would sell it to him. Laboratory analysis showed that the substance was indeed crack cocaine.

On March 31, 1996, in an investigation separate and unrelated to the HFGTF investigation, the Hartford Police Department ("HPD") executed search and seizure warrants at apartments 205 and 305 at 252 Laurel Street in Hartford. The investigation, including the use of confidential informants, had revealed that Gregory and his then-girlfriend, Telisa Murphy, ("Telisa") lived in 305 and that Gregory used 205 as a "safe house" to keep his cocaine, heroin, and firearms.

At the time of the execution of the warrants, officers found Gregory in apartment 305. In that apartment, officers also discovered a loaded .380 caliber pistol and, hidden in a couch, $6,850 in cash. In Gregory's pocket, the officers found, on one key ring, the keys to apartments 205 and 305. In apartment 205, officers found a large cardboard box in a closet near the kitchen. The box contained approximately one-quarter pound of crack cocaine, a loaded .38 caliber pistol, a 9 millimeter pistol, packaging materials for both heroin and cocaine, and other narcotics paraphernalia. Laboratory analysis revealed that the white rocks were crack cocaine, weighing approximately 4 ounces.

On June 3, 1996, federal agents arrested Gregory pursuant to an arrest warrant and criminal complaint. Following his signing of a *Miranda* rights waiver, Gregory admitted that he was a crack cocaine dealer. He stated that he had purchased cocaine in quantities of up to one kilogram in New York and up to one-half kilogram in Hartford. He explained that he had stopped dealing crack cocaine after the raid on his apartments in March.

On June 11, 1996, a federal grand jury returned a one-count indictment charging that Gregory, on or about March 26, 1996, knowingly and intentionally possessed with intent to distribute five grams or more of a mixture and substance containing a detectable amount of cocaine base, a Schedule II controlled substance. Attorney Donald LaBelle ("LaBelle" or "Plea Counsel") was assigned to represent Gregory.

During the late summer and fall of 1996, the government and Attorney LaBelle discussed a pretrial resolution of this case. LaBelle in turn discussed the offer with Gregory, who refused the offer, desiring to go to trial. LaBelle was "more than happy" to accede to his wish.

On September 23, 1996, the government forwarded a written draft plea agreement and cover letter to Gregory. At page four, the government set forth its calculations of Gregory's sentencing guidelines range. Based upon Gregory's possession of crack cocaine as charged in the indictment and certain relevant conduct (Gregory's possession of cocaine base and firearms at 252 Laurel Street), and giving him credit for acceptance of responsibility by pleading guilty, his total offense level, according to the government, was 31 and his criminal history category was calculated at V, resulting in a guideline range of 168–210 months. In the cover letter, the government recognized that Gregory may not be willing to agree to that Guideline range, but included it for the purpose of providing Gregory "with an accurate understanding of the Government's assessment" of those issues. LaBelle discussed the proposal with Gregory, who turned it down because he still claimed he was innocent and wanted to go to trial. LaBelle had no problem with this, as, at that time, he felt he had viable defenses.

Inasmuch as the parties could not reach agreement, jury selection was set for De-

cember 3, 1996. Prior to that time, Gregory had been informed that the government intended to call the undercover detective to whom he had sold crack cocaine and that the detective would identify him in court. Additionally, the government was prepared to offer the testimony of at least one surveillance agent who would identify Gregory as having been in the car with the undercover detective during the time of the drug deal. Telisa would also testify against him. Additionally, on the morning of jury selection, the government also informed Gregory that on the previous evening it had interviewed a new witness, who would identify the red Ford that Gregory had used in the March 26 offense as one which the witness allowed Gregory to use.

As jury selection commenced, Attorney LaBelle again went over the plea agreement in detail, page by page, with Gregory. Labelle also advised Gregory that with the new witness, the viability of his defense was now not as good. He still told Gregory that he would try the case, if that was what Gregory wanted to do. However, he also advised Gregory that the government would not offer the plea proposal after that date and that he ran the risk of losing the three points for acceptance of responsibility by not pleading guilty.

As jury selection commenced, Gregory determined to change his plea to guilty and to sign a written plea agreement. Because he refused to concede the accuracy of the government's guideline calculations in the plea agreement, that paragraph was modified.

Accordingly, Gregory pleaded guilty to the one-count indictment, admitting that he had distributed five grams or more of cocaine base to an undercover detective. The plea agreement, filed at the time of the plea, reflected Gregory's understanding that the Court might determine that he had possessed approximately four ounces of additional cocaine base and three fire-

arms at 252 Laurel Street, Apartment 205. Gregory reserved his right to contest those facts, intending to argue that such possession, even if proven, was not "relevant conduct" under U.S.S.G. §§ 2D1.1(b)(1) and 2D1.1(c)(4).

During the plea proceedings, the Court explained to Gregory that the government intended to assert that his possession of firearms and cocaine at 252 Laurel Street was relevant conduct. The government briefly provided the factual basis for that claim. The Court advised Gregory that he would be able to dispute such claim during his sentencing hearing. During the guilty plea, after Gregory was placed under oath to tell the truth, the following was asked by the Court:

(1) Whether it was Gregory's intention to plead guilty;

(2) Whether Gregory understood that he could be charged with perjury if he gave any knowingly false information to the Court;

(3) Whether he had taken any medications that day which affected his ability to understand the proceedings;

(4) Whether he had seen the indictment, understood what he was being charged with and had he had an opportunity to review it with his counsel;

(5) Whether he had any questions about the indictment that had not been answered to his satisfaction;

(6) whether Gregory understood that the Court did not want him to plead guilty unless he was in fact guilty of the offense charged;

(7) Whether he knowingly and intentionally possessed with the intent to distribute five grams or more of a mixture and substance containing a detectable amount of cocaine base;

(8) Whether he knew that what he had was cocaine base, had it in his posses-

·sion, and that he intended to, and actually did, distribute the cocaine base;

(9) Whether he was aware that the offense was one which carried a possible maximum penalty of forty years of imprisonment with a mandatory minimum penalty of five years of imprisonment and a maximum fine of $2,000,000;

(10) Whether he was aware that, if he was sentenced to incarceration, the Court must include, as part of his sentence, a term of supervised release, which would begin to run at the time he was released from prison, and that if he violated any of the conditions of his supervised release, he could be returned to prison to serve all or part of his term of supervised release;

(11) Whether Gregory was aware of the fact that by pleading guilty he was waiving certain rights, including the rights to persist in his not guilty plea and require the government to prove his guilt at trial beyond a reasonable doubt, the right o be represented at trial by a lawyer at no cost to him, the right to remain silent at trial, the right to testify on his own behalf at trial, as well as the right to call witnesses on his behalf, and the right to cross-examine witnesses called by the prosecution;

(12) Whether anyone had threatened him or coerced him to change his plea to guilty;

(13) Whether Gregory understood that the sentencing guidelines applied to his case, that the government might contend that he was a career offender, that he had discussed the guidelines with his attorney, and that he understood that the sentencing Court's guideline determination might differ from that of the defense attorney, and

that he could not withdraw his guilty plea in those circumstances;

(14) Whether he understood that he had reserved the right to claim that he was not a career criminal in his plea agreement;

(15) Whether he understood that the government had agreed that his guilty plea would be in satisfaction of any criminal liability he had in Connecticut as a result of his possession and distribution of cocaine base on March 26, 1996, but that it still contended that he was a career criminal based on other "relevant conduct";

(16) Whether he believed that the government had made any other promises to him to get him to change his plea;

(17) Whether he understood that, if the Court found "relevant conduct" and enhanced his sentence, he could appeal from that sentence;

(19) Whether he realized that the fact that he was on probation or parole at the time he committed the crimes he was attesting to could be a basis for an enhancement of his sentence;

(20) Whether he understood that the firearms found in the raid on his apartment possibly could also result in a sentence enhancement;

(21) Whether he was aware that the Court might also take into consideration the fact that possessed approximately four ounces of cocaine base when his apartments were raided on March 26, 1996 and that he could contest that during his sentencing hearing, with the aid of his counsel;

(22) Whether he was aware that the probation department would make an in-depth study of him and make a recommendation on his guideline range and that he was free to comment on the probation officer's report;

(23) Whether, aside from the issue of relevant conduct, he agreed with the substance of the evidence and proof as set forth by the government at the time of his plea;

(24) Whether his attorney knew of any reason as to why Gregory should not plead guilty to Count One of the indictment.

Only after Gregory and his attorney responded appropriately to each inquiry did the Court accept his guilty plea.

Prior to the entry of his guilty plea, Gregory also entered into a cooperation agreement with the government, in a closed chambers hearing. The Court made very sure, according to the colloquy, that if Gregory did anything to void the agreement, the government would be free to do so. Pursuant to this spirit of cooperation, the government advised that it would not object to Gregory's presentence release on continued bond. The cooperation agreement, again thoroughly reviewed by the Court with Gregory, was executed on December 5, 1997. However, Gregory was unable to begin active cooperation due to arrest warrants outstanding in New York and Connecticut. Although Gregory agreed to turn himself in on the warrants so that he could begin to cooperate, by January 15, 1997, he still had not done so by that date and the warrants remained active. In the meantime, the HPD arrested Gregory on January 13, 1997, charging him with assault on Telisa and criminal mischief. Given these violations of the cooperation agreement, the Court granted the government's motion of January 16, 1997, to revoke Gregory's bond and ordered him detained pending sentencing. At the same time, the government informed Gregory by letter that, because he had violated his cooperation agreement, it was no longer interested in working with him and, since he had not provided substantial assistance, it would not be filing a motion on his behalf pursuant to Section 5k1.1 of the Sentencing Guidelines.

On February 17, 1997, Petitioner submitted his statement of the offense to the United States Probation Office ("USPO"). In that statement, submitted in excess of six weeks following the entry of his guilty plea, he reiterated the facts that he had admitted during the guilty plea proceeding. He admitted that he had sold approximately one-half ounce cocaine base to an undercover agent and stated that "I accept full responsibility for such conduct." He further indicated to the USPO that he regretted his conduct and attributed it, in part, to his own substance abuse problem. He stated that he was "sorry for selling cocaine."

Thereafter, just prior to his April 7 sentencing date, Petitioner requested that the court appoint alternative counsel to investigate the circumstances of his guilty plea. The Court appointed Attorney Thomas Furniss ("Furniss" or "Sentencing Counsel"). Plea Counsel LaBelle filed his withdrawal from the action at that time.

Subsequently, on May 20, 1997, Furniss filed a Motion to Withdraw Guilty Plea, based on Gregory's alleged innocence and that the guilty plea had not been "truly understanding and knowing", as Gregory asserted that he "made a tactical decision to enter a guilty plea based on somewhat rushed discussions with his attorney" and, that, when presented with the plea agreement, Gregory "did not in fact have time to study it or even read it in its entirety."

An extended hearing on the Motion to Withdraw Guilty Plea was held on September 10, 1997. After taking extensive testimony, including that of the Plea Counsel, the Court denied the Motion. The Court held that Gregory had failed to meet his burden under Fed.R.Crim.P. 32(e), in that Gregory had not shown that he had any viable legal defense to the charge nor

could he point to any defects in the plea canvas.

As noted above, the Court's Rule 11 canvas was scrupulous. It made sure that Gregory understood everything about the plea agreement and, if he appeared confused, went over it again. After each section of the agreement, spoon-fed to Gregory, he answered that he understood everything that was being explained to him. The Court read the indictment to Gregory and then proceeded to break it down into is constituent elements, asking Gregory if he had engaged in the conduct required for each element. At every instance, Gregory answered in the affirmative.

At the hearing on the Motion to Withdraw Guilty Plea, Gregory attempted to show that he did not understand the concept of "relevant conduct" and how that could fit into his possible sentence. However, a review of the transcript shows that the Court and his Plea Counsel had both discussed it with him at length. At the hearing, Plea Counsel testified that he had explained the concept in detail.

" ...[T]he defendant convinced the Court at his plea allocution that he had thoroughly considered the ramifications of his guilty plea. Given the on-going plea negotiations between the defendant and the government, his protest four months later that he was rushed into a decision seems disingenuous. Finally, the Court explained 'relevant conduct' to Mr. Gregory during the Rule 11 proceedings. He twice indicated to the Court that he understood the role 'relevant conduct' might play in his sentencing. He may not now claim that he did not understand the concept. To conclude, the Court was satisfied at the time and remains convinced that Mr. Gregory's guilty plea was knowing and voluntary."

Ruling on Defendant's Motion to Withdraw Guilty Plea, at 16 (September 25, 1997).

The Court also rejected Petitioner's claim of innocence as incredible and conclusory. He set forth no viable defenses, but merely stated that he was innocent, in complete contradistinction to his plea allocution and his statement of the offense he gave to the USPO. "Having accepted Mr. Gregory's plea based on his sworn statements of guilt, this Court will not allow him to withdraw his plea merely because of his belated assertion that he is not guilty after all." *Id.* at 18.

Finally, as to Gregory's claim of ineffective assistance of Plea Counsel, the Court rejected same. "It is clear that Mr. LaBelle discussed the contents of the draft plea with Mr. Gregory. As for the final plea agreement, Mr. Gregory testified at his plea allocution that he had read it and discussed it thoroughly with Mr. LaBelle. When asked if he had any questions about it, he told the Court that he did not.... A finding of constitutionally ineffective assistance of counsel is certainly not warranted by the fact that Mr. LaBelle informed his client that he believed that the government had a strong case against him, making a guilty plea a viable option. Such candid advice is what an attorney should give his client. There is, thus, no support in the record for a finding of ineffective assistance of counsel." *Id.* at 21.

Over the next several months, Furniss and Gregory attempted to prepare for the sentencing hearing. Furniss had Gregory take a lie detector test, following which he moved to withdraw as counsel, claiming an irretrievable breakdown in communications between himself and his client. A hearing was held by the Honorable Peter C. Dorsey on the Motion and, on October 21, 1997, Judge Dorsey denied the Motion. "After a careful review of all that was presented at the hearing, two things are

clear. Mr. Furniss has not been deficient or delinquent in his efforts to protect defendant's rights nor in presenting defendant's position. Nor is there a basis for finding any insurmountable obstacle to Mr. Furniss' ability to communicate with the defendant. Defendant has been, and will likely continue to be, a difficult client with whom to communicate, probably the result of defendant's vacillations, lack of candor or forthrightness and inconsistency." Order Re: Motion of Counsel to Withdraw, at 3 (October 21, 1997).

A six-hour sentencing hearing was held on November 13, 1997. At issue were the claims of a downward departure for acceptance of responsibility and an upward departure for "relevant conduct." The Court had no difficulty with the acceptance of responsibility departure and its decision not to give the points to Petitioner. The Court made it plain that on two separate occasions—the plea allocution and the statement of offense conduct given by Gregory to the USPO—Gregory had admitted his guilt beyond cavil. To move to withdraw one's guilty plea, with no other reason than, "Oh, by the way, I'm completely innocent", is the utter antithesis of acceptance of responsibility. Accordingly, there would be no downward departure for this reason.

The claim of relevant conduct was much more critical, as the USPO had calculated that such a finding and an upward departure thereon would increase Gregory's guideline range by, at a minimum, 112 months.

The Government offered the physical evidence of the additional, laboratory tested, one-hundred grams of cocaine base, a large sum of cash money and three firearms found during the exercise of a search warrant on Gregory's apartments in March, 1996. It offered the evidence of an undercover narcotics detective, who knew Gregory and had purchased crack cocaine from him. Another undercover narcotics agent had the above-referenced transaction under surveillance and identified Gregory. The dealer who introduced Gregory to the undercover detective also testified that Gregory had sold cocaine base to the police officer.

The officer who gave Gregory his Miranda rights testified that Gregory willingly signed the waiver card and gave an incriminating statement to the police. There was absolutely no evidence that Gregory was physically touched or restrained or beaten during this interview. Although Gregory alluded to same, through his counsel, no evidence of any such conduct was offered at the hearing.

The most damning witness was Gregory's then-wife, Telisa. She testified that Gregory was a heroin and crack cocaine dealer, who had expensive jewelry, expensive cars, yet never had a job. His status of a professional dealer went back to at least 1995. She recognized the items seized from Gregory's apartments because she lived there with him and had seen him using the paraphernalia in packaging both heroin and cocaine base. She had also seen the case, guns, and cocaine base in the house prior to the seizure.

Telisa also testified at length about the brutal beatings suffered by her at the hands of Gregory. He, *inter alios*, beat her with a hammer and bottles. He threatened to kill her should she go to the police or testify against him. Before she could get to the police, he beat her severely and told her that she had to advise the police that the evidence seized belonged to her, not Gregory. In fact, his proposal of marriage was made as he held a gun to her head and told him she was marrying him before jury selection, as he believed a wife could not testify against a husband.

It was very clear to the Court that Telisa was frightened to be testifying

against Gregory at this hearing. Yet, her testimony was firm and absolutely credible.

Following legal argument, the Court found that the government had proven relevant conduct. Accordingly, the resulting sentencing guideline range was 262 to 327 months in prison. The Court sentenced Gregory to the bottom of the guideline range, or 262 months.

His appeal of the sentence was affirmed and the Second Circuit advised Gregory that if wished to make an ineffective assistance claim, he had to pursue the instant petition,

In this Motion, Gregory contends that his Plea Counsel was ineffective for: 1) failing to explain the nature of the offense, the consequences of his plea, and the guideline sentencing process; 2) failing to file a motion to suppress evidence; 3) failing to advise petitioner that he would be sentenced for all drugs in the case; 4) failing to have certain evidence tested for the presence of cocaine; 5) failing to move to suppress post-arrests statements that Gregory claims were involuntary; 6) failing to move that the undercover officer be required to identify Gregory in an out of court line-up; 7) failing to file pretrial discovery motions necessary to prepare a defense; 8) failing to challenge the government's revocation of the cooperation agreement; and 9) failing to conduct a reasonable investigation of Gregory's criminal history.

Gregory contends his Sentencing Counsel was ineffective for: 1) failing to preserve his chain of custody/drug type and composition objection at sentencing; 2) failing to suppress Gregory's post-arrest statement; 3) misleading the petitioner into believing that he had to subject himself to a polygraph; 4) failing to interview the government's witnesses who testified at the plea proceeding; 5) failing to subpoena and interview "favorable witnesses";

6) failing to properly investigate; 7) failing to provide petitioner with copies of crucial documents, specifically the pre-sentence report; and 8) failing to point out mitigating factors such as psychological/narcotics abuse issues at the sentencing.

Finally, Gregory claims that the Court's finding as to the proof established as to relevant conduct was proof by a preponderance of the evidence, rather than beyond a reasonable doubt standard required by *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

## LEGAL ANALYSIS

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth the yardstick for measuring claims of ineffective assistance of counsel.

> The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the 'ample opportunity to meet the case of the prosecution' to which they are entitled. (citations omitted in original) .... The Sixth Amendment recognizes the right to assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results.

*Id.* at 685, 104 S.Ct. 2052.

For that reason, the Supreme Court has recognized that "the right to counsel is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). Counsel can deprive a defendant of the right to effective assistance, simply by failing to render "reasonably competent advice." *Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

The *Strickland* Court, after reviewing its earlier cases which never answered in full the inquiry of adequate assistance of counsel, set down a two-prong test by which such assistance is to be measured. First, the defendant must show that counsel's performance was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

■ The proper standard for attorney performance is that of reasonably effective assistance under prevailing professional norms. *Id.* at 687–88, 104 S.Ct. 2052. One of the overarching duties recognized in *Strickland* is to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution. *Id.* at 688, 104 S.Ct. 2052. In the circumstances of a guilty plea, the Petitioner can only demonstrate prejudice by showing that "there is a reasonable possibility that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

■ Judicial scrutiny of counsel's performance must be highly deferential. The performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances and the reasonableness of counsel's conduct must be judged as of the time of counsel's conduct. *Strickland*, 466 at 688–90, 104 S.Ct. 2052.

■ An error by counsel, even if professionally unreasonable, does not warrant setting aside a conviction, or a sentence, if the error had no effect. In other words, under the second prong of *Strickland*, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.* at 691–92, 104 S.Ct. 2052. However, if the Petitioner fails to satisfy one prong of the *Strickland* analysis, it need not consider the other. *Id.* at 697, 104 S.Ct. 2052.

The Court will analyze the conduct of successive counsel seriatim.

Plea Counsel: Gregory's contention that counsel failed to explain the consequences of the plea and guideline sentencing is belied by the record. Labelle testified, at the hearing to withdraw Petitioner's plea, that he had discussed the maximum possible sentence under the guidelines for the crime charged, that the sentence could be enhanced if "relevant conduct" was proved by the government, and, finally, that he believed that the petitioner "understood the downside risk" of the plea. Although on the day he entered his plea, time was of the essence for Gregory, Plea Counsel had presented the proposed Agreement, and the government cover letter, to Gregory several months earlier and discussed it in full on two earlier occasions. Further, at a comprehensive plea allocution, Gregory had questions about relevant conduct which, according to the allocution, were answered to his satisfaction. In fact, he was able to negotiate a modification of the paragraph dealing with relevant conduct prior to his entering his plea. Plainly, then, he understood what pleading guilty meant to him. Judge Dorsey also recognized this during the hearing on Sentencing Counsel's Motion to Withdraw. As his Ruling noted, the Petitioner "did not refute Mr. LaBelle's testimony that the high possible sentence range was discussed well before the plea."

■ Gregory next contends that LaBelle should have moved for a continuance when he was advised about the new government witness on the morning of jury selection. There is nothing deficient about

such a tactical decision. Jury selection had already been put off and in that time, a new witness, quite damning, had come forward. It was not unreasonable to believe that this could happen again, with more time for the government to prepare its case.

■ Plea counsel's failure to challenge the searches and seizures at 252 Laurel Street, Apartments 205 and 305 was not an unreasonable decision. The warrant was based on information from a confidential informant, which was found to be accurate in every sense. Gregory now contends that other witnesses would have supported his claims that the evidence was not his. However, he has never come forward, even at this date, with affidavits from any other witness or any other supporting facts. Further, all the evidence weighs heavily in the government's favor. The confidential informant's evidence was fully supported by what was found, and where, in the apartments. Gregory was found with keys to both apartments on his key chain. Telisa and Melvin Blunt, testifying at the sentencing hearing, connected Gregory to the contraband found in both apartments. There is no reason to believe that any different result would have been garnered by the filing of a motion to suppress.

■ The result is the same as to Gregory's allegations of ineffective Plea Counsel based on his failure to move to suppress the incriminating statements Gregory made to the investigating officers after his arrest. In contradistinction, the Government presented a fully executed waiver of his *Miranda* rights, signed by Gregory. A Motion to Suppress would have changed nothing, in the face of this waiver.

Gregory next asserts that his Plea Counsel was ineffective for failing to advise him that he could be sentenced for all the drugs in the case and for not having them tested for amounts of cocaine base. This claim is belied by the record, as La-Belle stated that he had discussed the potential for consideration of these drugs to enhance his sentence, both at his plea allocution and at the hearing on Furniss' Motion to Withdraw. Further, Gregory also had the following exchange with the Court during his plea allocution:

> COURT: "It has also been brought to my attention, and I hope you understand, that I may also consider similar conduct that has not been charged, including your possession of approximately four ounces of crack cocaine and three firearms at 252 Laurel Street, apartments 205 and 305, on March 26, 1996. . . . Do you also understand that that may be factored into your guideline range ?"
>
> DEFENDANT: "Yes."

In light of this record, Gregory may not be heard to assert now that he did not know that the potential for the additional contraband found in his apartments being added to his original guideline range existed. Both Plea Counsel and the Court further advised him that he would have the ability to argue against relevant conduct at his sentencing.

As to testing the drugs, Plea Counsel and Gregory had already seen the government's laboratory analysis of all drugs obtained from him. The drugs from his original sale to the undercover agent and those seized from Apartment 205 all contained cocaine base. A third group which Gregory sold to an undercover agent contained no cocaine base and was not charged as relevant conduct. There was, resultingly, no reason at all for Plea Counsel to move the Court for permission to do any independent analysis. He had no reason to provide the Court for so doing and, accordingly, such silence is not the act of an ineffective counsel.

■ Gregory claims that LaBelle was ineffective for failing to move the Court for

permission to hire an expert witness to review the audiotape of the initial undercover transaction. Gregory asserts no facts that call into question the validity of the videotape and LaBelle knew that he could thoroughly cross-examine the undercover detective on the stand, which was sound trial strategy. Omissions which may constitute sound trial strategy do not constitute ineffective assistance of counsel. *United States v. Hon*, 17 F.3d 21, 27 (2d Cir.1994).

■ Gregory's next claim of ineffective assistance by his Plea Counsel was that counsel failed to request an out of court line-up in order to determine whether the undercover detective could identify Gregory. Gregory submits nothing but conclusory statements as to this allegation. There is no reason to believe that both the undercover detective, and the surveillance officer, could not easily identify Gregory and they both did so without hesitation at the sentencing hearing.

In this District, the Standing Order on Discovery in Criminal Cases provides that the government turn over all information for which any motion could be made. Hence, there was no reason for Plea Counsel to file what might be found to be frivolous discovery motions. Further, Gregory identifies no motions which should have been made.

■ Gregory also provides no facts supporting his contention that Plea Counsel was ineffective for not challenging the revocation of the cooperation agreement. Gregory continually failed to cooperate in Plea Counsel's attempts to cure outstanding warrants against Gregory and the final blow was his arrest approximately six weeks after entering the cooperation agreement for assault on Telisa and criminal mischief. The government was well within its rights to send the revocation letter, given Gregory's recalcitrant and violent behavior.

Gregory's argument that Plea Counsel was ineffective for failure to examine his criminal history is also belied by the record. LaBelle reviewed Gregory's history and had Gregory's arrest record sheet, police reports and pertinent discovery material in his possession. Further, if Gregory disagreed with the analysis of his criminal history performed by the USPO, he was free to challenge such at the time the report was being completed, which he failed to do. Resultingly, it is inferred that Petitioner's criminal history was accurate and both LaBelle and the USPO were correct in their assessment of such history.

For all of these reasons, the Court finds that Plea Counsel provided exemplary assistance to Petitioner and any actions he took or did not take were the antithesis of ineffective assistance of counsel.

As to the Sentencing Counsel, the Court also finds that his performance met the standards of effective assistance of counsel pursuant to the *Strickland* analysis.

Gregory requested that Sentencing Counsel withdraw from his case and a hearing was held on this Motion. Judge Dorsey found "nothing to suggest that Mr. Furniss has, in any manner suggested by Mr. Gregory, failed to represent Mr. Gregory, nor to protect his rights in accordance with the standards to which counsel are held." Ruling on Motion to Withdraw at 2. Although this Court agrees with Judge Dorsey, it will, in a sense of fundamental fairness briefly review Gregory's contentions.

Gregory asserts that Sentencing Counsel was ineffective because he did not test or raise the issue that, on one occasion in April, 1996, he had sold fake cocaine to an undercover agent. He is wrong for three reasons. First, Sentencing Counsel did raise the issue before this Court at the sentencing hearing. See Joint Appendix at 352. Second, Gregory admitted that he

sold 11.3 grams of crack cocaine to the same undercover detective on March 26, 1996. Further, on March 31, 1996, the government seized approximately one-quarter pound of cocaine base from Gregory's apartments. The substances from both March 26 and March 31 tested positive for cocaine base. Finally, the Court did not consider the fake cocaine as relevant conduct and it was not counted in the total amount of drugs upon which sentencing enhancement was made.

 The next argument put forth by Gregory is that Sentencing Counsel was ineffective in failing to move to suppress post-arrest statements, failing to subpoena favorable witnesses, and failing to interview government witnesses. For the reasons set forth above, Sentencing Counsel made a strategic decision not to move to suppress Petitioner's post-arrest statement, due to an executed waiver of his *Miranda* rights by Gregory. Such was reasonable conduct under *Strickland.* Then, too, Sentencing Counsel made the decision not to call "favorable witnesses" because, based on the questionable truthfulness of Gregory, he ran the risk of introducing perjured testimony. This was ethical conduct and reasonable trial strategy. Finally, the evidence against Gregory at the sentencing hearing was overwhelming. It is not ineffective assistance where a petitioner cannot demonstrate how the outcome of the proceeding would have been different. *Hurel Guerrero v. United States,* 186 F.3d 275, 282 (2d Cir.1999). Gregory offers no rationale to believe that the outcome of the sentencing hearing would have been different, considering the strong, credible evidence set forth against him.

 Gregory also claims that his Sentencing Counsel was ineffective by misleading him into believing he had to take a polygraph and then not using same, leading to the inference that the outcome was adverse. Based on Gregory's behavior and testimony before this Court, it is no wonder that the outcome was adverse and Sentencing Counsel could not use it. As Judge Dorsey stated, in finding that Sentencing Counsel was not ineffective for demanding the polygraph, "[t]hat a test was done at an attorney's instance does not constitute ineffective assistance even though the result was disappointing." Ruling on Motion to Withdraw at 3. Further, in his moving papers, Gregory fails to establish why Judge Dorsey's decision should be questioned, or how this constituted ineffective assistance of counsel. This Court finds that this conduct, too, was reasonable under Strickland.

Petitioner's next contention is that Furniss was ineffective for failing to interview government witnesses or to put "favorable witnesses" on the stand. He, however, fails to show how such would have changed the outcome of his sentencing hearing, especially based on the cross-examination of those witnesses. The decision of whether to call a "favorable witness" was a question of trial strategy which this Court wil not second-guess. *Accord United States v. Nersesian,* 824 F.2d 1294, 1321 (2d Cir. 1987)("The decision whether to call any witnesses on behalf of the petitioner, and if so, which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial."). Further, Petitioner offers no evidence of any testimony which would have possibly changed the outcome of this hearing.

Petitioner next argues that Furniss was ineffective in that he failed to investigate his case. Such claim is belied by the record. Furniss' extensive description of the case at the sentencing hearing clearly shows that he was fully aware of the facts and circumstances of this case

Gregory next claims that Furniss failed to provide him with the presentence re-

port. This, too, is belied by Gregory's own testimony. He was asked during the November 13, 1997 sentencing hearing whether he had read the report, to which he replied that he had, and had discussed it sufficiently with his counsel.

Gregory's final contention was that Sentencing Counsel failed to argue mitigating factors, such as his limited education and drug abuse, at the sentencing hearing. However, Gregory ignores the fact that such was contained in his presentence report, which the Court had studied carefully and had discussed same with the probation officer who produced the report. Further, Gregory fails to establish any reason that the oral introduction of these factors at his sentencing hearing would have changed the outcome in any event.

For each and all of these reasons, the Court fails to find that the conduct of Sentencing Counsel fell below that of competent trial counsel. Petitioner has, in no way, shown "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

Gregory's final contention is that his sentence is unconstitutional under *Apprendi,* because he alleges that the maximum sentence for his crime and relevant conduct was 240 months. His calculation is incorrect. Based on his criminal history, the fact that the Court refused to give him a downward departure for acceptance of responsibility, and the finding of relevant conduct, the sentencing guideline range was 262 to 327 months imprisonment. The Court sentenced Gregory to 262 months, or twenty-one years and ten months.

In his plea agreement, Gregory had agreed to admit that the cocaine base that he possessed and distributed weighed five grams or more. Therefore, he was sub-

jected to the enhanced penalties of 21 U.S.C. § 841(b)(1)(B), which mandated a statutory maximum of forty years for Petitioner's conduct. The Court reiterated this when the plea allocution was being completed and Gregory acknowledged that he could receive forty years in prison.

■ "The constitutional rule of *Apprendi* does not apply where the sentence imposed is not greater than the prescribed maximum for the offense of conviction." *United States v. Thomas,* 274 F.3d 655, 664 (2d Cir.2001). Accordingly, under the sentence in this case, *Apprendi* does not apply.

### *CONCLUSION*

The proper standard for attorney performance is that of reasonably effective assistance under prevailing professional norms. *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052. The Court finds that both LaBelle and Furniss meet this standard. Petitioner's Motion [Doc. No. 93] and Amended Motion [Doc. No. 98] are hereby DENIED.

SO ORDERED.